# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY STEWART,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>K. HOLLAND, et al.,<br><br>　　　　Defendants. | Case No.  1:14-cv-00322-AWI-BAM-PC<br><br>ORDER REQUIRING PLAINTIFF TO EITHER FILE FIRST AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS<br><br>THIRTY-DAY DEADLINE |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302.  Currently before the Court is Plaintiff's complaint, filed March 7, 2014.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail to state a claim on which relief may be granted," or that "seek monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1

1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012)(citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at CSP Sacramento, brings this civil rights action against correctional officials employed by the CDCR at CCI Tehachapi, where the events at issue occurred. Plaintiff also references conduct that occurred by Defendant physicians at CMC San Luis Obispo and Pelican Bay State Prison. Plaintiff names the following Defendants employed by the CDCR at CCI Tehachapi: Warden K. Holland; Associate Warden M. Bryant; Correctional Officer (C/O) V. Serna; C/O T. Langhardt; Lt. V. Cortez; Lt. K. Nowels; S. Carey; P. Grant; Captain P. Matzen; Lt. I. Alomari. Plaintiff also names as Defendants former CDCR Secretary Matthew Cate, CMC San Luis Obispo physician D. Duncan and Pelican Bay State Prison physician R.

2

Hoover.

Plaintiff claims that on June 19, 2012, Defendant Langhardt subjected Plaintiff to sexual harassment and retaliation. Plaintiff specifically alleges that on previous occasions, Langhardt made sexually suggestive and explicit comments to Plaintiff, intimating he wanted to engage in sexual conduct with Plaintiff. Plaintiff told Langhardt that "I would appreciate it if he would not address me or play with me in that way." (Compl. p. 8.) Langhardt made another sexually suggestive comment which "was his way of asking me did I want a shower." (Id.) Langhardt secured Plaintiff in handcuffs and directed him toward an officer at the bottom of the stairs. He then searched Plaintiff's cell. Plaintiff requested a cell search slip, "letting him know this is harassment because it was well known that cells were searched earlier that day on a mass search." Langhardt "threatened to write me up for threatening him." Plaintiff did file an inmate grievance regarding Langhardt's verbal harassment. Plaintiff alleges that after the June 19, 2012, incident, he experienced "denial of yard, law library, destroyed packaged items ordered from Union Supply the month of December 2012 and open legal mail." (Compl. p. 9.)

Plaintiff wrote letters to outside agencies, including the U.S. Department of Justice, regarding the sexual harassment. Plaintiff was interviewed by Defendant Lt. Nowels. At the interview, Plaintiff requested to be removed from or separated from Langhardt. The Request was denied. Plaintiff continued to write grievances and send letters to correctional officials regarding the sexual harassment and "racist comments." Specifically, Defendants Grant and Carey "loudly said over the tier that Plaintiff is a racist." (Comp. p. 10.) Plaintiff alleges that Defendant Grant, who was working in the law library, denied Plaintiff access to the law library. Plaintiff alleges that he was "appealing his conviction with actions in Los Angeles Superior Court and Appellate Court." (Id.)

Plaintiff filed an inmate grievance regarding the conduct of Defendants Grant and Carey. Plaintiff alleges that Defendant Appeals Coordinator Alomari refused to process the grievance. Plaintiff sent a request to Defendant Captain Matzen, but did not receive a response. Lt. Nowels eventually responded, denying Plaintiff's request to be moved. Plaintiff continued to submit requests to be moved away from Defendant Langhardt in the form of 602 grievances, form 22s,

1  and letters.  Plaintiff alleges that all of his requests were ignored.  Plaintiff indicated that he was
2  in fear for his life, but the requests were still denied.

3       On April 3, 2013, Plaintiff asked Correctional Counselor Carter to help him get a cell
4  move because of problems with Langhardt.  Later that day, Defendant C/O Serna came to
5  Plaintiff's cell and asked him if he wanted to shower.  Since it was not Defendant Langhardt who
6  asked, Plaintiff agreed.  C/O Serna placed Plaintiff in handcuffs and sent him to the bottom of
7  the stairs.  Defendants Langhardt and Carey were waiting for him.  In order to avoid Langhardt,
8  Plaintiff "chose to go right to avoid C/O Langhardt but C/O T. Langhardt switched positions
9  when Plaintiff went to the right grabbing Plaintiff's arm, Plaintiff then asked C/O Langhardt to
10 please allow someone else to escort him, because of the 602 Plaintiff on T. Langhardt for sexual
11 harassment.  C/O T. Langhardt denied this request placing Plaintiff in the shower and placing
12 razor in Plaintiff's hand while massaging the palm of Plaintiff's hand with his finger."  (Compl.
13 p. 12.)

14       Plaintiff completed his shower, and was escorted back to his cell by Langhardt and
15 Carey.  Plaintiff again asked Langhardt to "respect his request due to the previous sexual
16 harassment complaint."  (Id.)  Langhardt ordered Plaintiff to cuff up.  Plaintiff requested a
17 complaint form while he was being handcuffed.  When Plaintiff exited the shower, Langhardt
18 "followed behind and deliberately stepped hard on the back of Plaintiff's feet."  (Id.)  Plaintiff
19 asked if that was necessary.  Langhardt "then became so angry roughly grabbing Plaintiff's left
20 arm squeezing & twisting it, dropping shower towel."  (Id.)  Carey picked up the towel and
21 handed it to Plaintiff.  Plaintiff was escorted to the bottom of the stairs.  As Plaintiff walked up
22 the stairs, Defendant C/O Serna pepper-sprayed Plaintiff "with a 5 to 6 second burst of pepper
23 spray . . . this pepper spray hit Plaintiff directly in the face.  As Plaintiff continued walking to
24 cell Serna followed pepper-spraying Plaintiff non-stop all over the side and back even when
25 Plaintiff was secured in cell facing wall."  (Compl. p. 13.)

26       Once the cell door was closed and the tray slot was closed, Langhardt opened the tray slot
27 and pepper-sprayed Plaintiff, "laughing and accusing Plaintiff of slipping the cuffs."  (Id.)  Once
28 Langhardt finished spraying Plaintiff, Defendant Carey appeared at the cell door, "laughing as

Plaintiff pleaded for C/O Carey to take the cuffs off so Plaintiff could wash the pepper spray from eyes and face. All this time while Plaintiff pleaded with S. Carey he advised S. Carey of his bad heart condition and that he could not breathe. C/O S. Carey just laugh giving no directions on how to decontaminate." (Id.) Plaintiff told Carey that he was suicidal, and "minutes later," Carey removed the handcuffs. Plaintiff tried to decontaminate by washing his face in the sink, but there was "very little" water flowing from the sink. (Compl. p. 14.) The pain was unbearable, so Plaintiff used the toilet to attempt to wash off the pepper spray.

After "minutes" of being observed by Defendant Carey, Plaintiff was taken out of his cell and escorted to the kitchen and placed in a cage. Plaintiff was examined by Registered Nurse (RN) Nixon. Plaintiff explained to Nixon that he had a chronic heart condition and had trouble breathing. Nixon "brushed it off as a pepper spray effect refusing to check my heart for the severity or symptoms leaving me on the floor of the cage struggling to breathe." (Id.) Plaintiff also suffered from "unusual stomach pains," and needed to defecate. Plaintiff made several requests to the sergeant who relayed the information to Defendant Carey. After "about an hour," Plaintiff defecated in his clothing. Plaintiff was then escorted to an outside cage to clean up. Plaintiff was then taken to medical suicide watch and "left to linger in excruciating pain from pepper spray and chest pain." (Id.) Plaintiff alleges that "not once" was he offered the opportunity to wash or decontaminate that evening.

Plaintiff was released from suicide watch the following day. Plaintiff discovered that his property had been moved to a different building. When Plaintiff arrived at his new cell, he discovered that some of the same officers that worked in his prior housing unit were working in his current housing unit. Plaintiff asked to speak to the psychologist, and explained that "I had become suicidal from the stressing situation." (Id.) Plaintiff was re-admitted to suicide watch.

Plaintiff was on suicide watch at CCI Tehachapi for two days, then transferred to the California Men's Colony and placed on suicide care. Within several days, Plaintiff was seen by a "mental committee team." (Compl. p. 15.) Plaintiff was eventually housed at CMC AdSeg. While at CMC, Plaintiff was interviewed about the pepper spray incident at CCI. Although Plaintiff does not directly allege that he was charged with a disciplinary violation, he refers to an

5

interview regarding a CDC-115.  Plaintiff was interviewed at CMC by an Investigative Employee.

On May 5, 2013, a hearing was conducted on the disciplinary violation.  The hearing officer, Lt. Cortez, asked Plaintiff if he intended to file a complaint against C/Os Serna and Langhardt.  Plaintiff stated that he did.  Lt. Cortez then became "infuriated, because he began using profanity, calling Plaintiff a mother****r." (Compl. p. 21.)   Plaintiff was found guilty, and placed on C-status.

While waiting for the proper documents so that Plaintiff could appeal the guilty finding, Plaintiff continued to file complaints related to the loss of his property, legal material and knee brace. All of Plaintiff's requests were denied by CCI Tehachapi.  Plaintiff alleges that CCI Tehachapi was aware that Plaintiff had pending court cases prior to his transfer to CMC, because there was a pending inmate grievance concerning law library access.

Plaintiff alleges that CCI Tehachapi was also aware of his knee brace and knee condition, because of the chronos Dr. Vu had issued in November and December 2012.  Plaintiff also alleges that the prison was aware of his knee brace because "someone" called suicide watch and asked the nurses on duty whether Plaintiff had a knee brace.  The nurses informed the caller that there was a knee brace in Plaintiff's cell.  It was never sent to Plaintiff at CMC.

Plaintiff filed a "modification disability claim," seeking a knee brace.  (Compl. p. 18.)  On May 28, 2013, Dr. Duncan, M.D., denied the request on the ground that Plaintiff did not have a knee brace chrono.  Plaintiff alleges that this was incorrect, because Dr. Vu issued a renewed chrono in December 2012.  Plaintiff was transferred to Pelican Bay State Prison, where another request for a knee brace was denied.

Plaintiff complained that the denial of a knee brace was causing Plaintiff's knee "to get worse with pain and a tearing sharp pain sensation." (Compl. p. 19.)  The doctor at Pelican Bay continued to deny Plaintiff's request for a knee brace, "even after measuring right and left calf and noticing the right calf was smaller than the left calf." (Id.)

On September 10, 2013, the property officer explained to Plaintiff that although his property was at receiving and release, he would not issue it because Plaintiff was to be

transferred the next day. On September 11, 2013, Plaintiff arrived at CSP Sacramento. Upon his arrival, Plaintiff explained his situation to the property officer. The officer retrieved Plaintiff's knee brace from his property.

Plaintiff discovered, through filing inmate grievances, that Defendant Carey packed Plaintiff's property (without the knee brace) at CCI Tehachapi before he was transferred to CMC San Luis Obispo. Plaintiff alleges that he "filed a complaint, 602 on this matter May 2013, but did not have packing officers who packed property, because C.C.I. Tehachapi refuse to adequately process and respond to form 22s and 602s concerning property. It also noted that Plaintiff's property was packed less than 24 hours after he was pepper sprayed and admitted into suicide watch." (Compl. p. 20.)

Plaintiff alleges that he continues to suffer severe pain and damage in his right knee from the denial of a knee brace from April to September, 2013. Plaintiff requested an MRI to verify the extent of damage. Plaintiff alleges that "all California Department of Correction Medical Doctors refuse to have MRI to determine or verify damage." (Compl. p. 21.) Plaintiff makes vague allegations regarding physicians at CMC San Luis Obispo and Pelican Bay State Prison. Plaintiff appears to allege that he re-filed inmate grievances and a Request for Accommodation pursuant to the Americans With Disabilities Act (ADA), all of which were denied.

### III.
### DISCUSSION

**A.   Eighth Amendment**

   **1.   Excessive Force**

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)(per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8 (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is

1  whether the force was applied in a good-faith effort to maintain or restore discipline, or
2  maliciously and sadistically to cause harm. Wilkins, 559 U.S. at 37(quoting Hudson, 503 U.S. at
3  7)(quotation marks omitted).

4  Not every malevolent touch by a prison guard gives rise to a federal cause of action.
5  Wilkins, 559 U.S. at 562 (quoting Hudson, 503 U.S. at 9)(quotation marks omitted). Necessarily
6  excluded from constitutional recognition is the de minimis use of physical force, provided that
7  the use of force is not of a sort repugnant to the conscience of mankind. Id. (quoting Hudson, 503
8  U.S. at 9-10)(quotation marks omitted). In determining whether the use of force was wanton or
9  and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application
10 of force, the relationship between that need and the amount of force used, the threat reasonably
11 perceived by the responsible officials, and any efforts made to temper the severity of a forceful
12 response. Hudson, 503 U.S. at 7 (quotation marks and citations omitted). The allegations that
13 Langhardt stepped on Plaintiff's foot and grabbed Plaintiff's arm are de minimis and fail to state
14 a cognizable claim.

15 The Court finds that Plaintiff has alleged facts sufficient to state a claim against
16 Defendants Serna and Langhardt for pepper-spraying Plaintiff. The complaint, liberally
17 construed, alleges that Plaintiff was not offering any resistance when Defendant Serna pepper
18 sprayed him and that he and Defendant Langhardt continued to pepper sprayed Plaintiff while he
19 was secured in his cell.

20 **2. Failure to Decontaminate**

21 The Eighth Amendment requires prison officials to take reasonable measures to
22 guarantee the safety of inmates, which has been interpreted to include a duty to protect
23 prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413F.3d 1036,
24 1040 (9th Cir. 2005). A prisoner seeking relief for an Eighth Amendment violation must show
25 that the officials acted with deliberate indifference to the threat of serious harm or injury to an
26 inmate. Gibson v. County of Washoe 290 F.3d 1175, 1187 (9th Cir. 2002). "Deliberate
27 indifference" has both subjective and objective components. A prison official must "be aware
28 of facts the inference could be drawn that a substantial risk of serious harm exists and . . . must

also draw the inference." Farmer, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

Liberally construed, the complaint states a claim against Defendants Langhardt, Serna, Carey and Nixon for failure to decontaminate Plaintiff. The facts alleged indicate that each Defendant knew that Plaintiff had been exposed to a substantial amount of pepper spray and failed to take any steps to decontaminate Plaintiff for over an hour.

As will be discussed in further detail below, Plaintiff alleges difficulties in filing inmate grievances. In addition to alleging that his requests were ignored, Plaintiff alleged that he was in fear for his life, but the requests were still denied. As to any allegations that any of the Defendants failed to respond to a danger to Plaintiff's life, the Court finds this allegation to be vague and conclusory. Plaintiff may not allege a generalized fear for his life, and then hold Defendants liable. Plaintiff has not alleged any facts indicating that any of the named Defendants knew of a particular risk to Plaintiff, and acted with deliberate indifference to that risk. Nor has Plaintiff alleged any facts from which an inference could be drawn that a substantial risk of serious harm exists and that any of the Defendants disregarded the risk. Allegations of generalized fear fail to state a cognizable claim.

### 3. Medical Care

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)(quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal

1  standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v.
2  Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or
3  failure to respond to a prisoner's pain or possible medical need" and the indifference caused
4  harm. Jett, 439 F.3d at 1096.

5       In applying this standard, the Ninth Circuit has held that before it can be said that a
6  prisoner's civil rights have been abridged, "the indifference to his medical needs must be
7  substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this
8  cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980)(citing
9  Estelle, 429 U.S. at 105-106).  "[A] complaint that a physician has been negligent in diagnosing
10 or treating a medical condition does not state a valid claim of medical mistreatment under the
11 Eighth Amendment.  Medical malpractice does not become a constitutional violation merely
12 because the victim is a prisoner."  Estelle, 429 U.S. at 106; see also Anderson v. County of Kern,
13 45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate
14 indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.
15 1990).  Additionally, a prisoner's mere disagreement with diagnosis or treatment does not
16 support a claim of deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

17      Regarding Plaintiff's allegation that Defendant Nixon failed to treat him when he was in
18 the holding cage, liberally construed, Plaintiff states a claim for relief.  Plaintiff advised
19 Defendant Nixon that he had a heart condition, and Nixon was aware that Plaintiff had difficulty
20 breathing because he had been pepper-sprayed and not decontaminated.  The allegations of the
21 complaint indicate that Plaintiff was left on the floor of the cage "struggling to breathe."
22 (Compl. p. 14.)  Such an allegation, liberally construed, stated a colorable claim for relief for
23 deliberate indifference to serious medical needs.

24      Regarding Plaintiff's allegations of denial of a knee brace, Plaintiff alleges that "CCI
25 Tehachapi" was aware of his knee brace and condition, because of the medical chronos issued in
26 November and December 2012.  Plaintiff also alleges that the prison was aware of his knee brace
27 because "someone" called suicide watch and asked the nurses on duty whether Plaintiff had a
28 knee brace.  Plaintiff alleges that, while at Pelican Bay, medical officials knew of the need for

1  his knee brace, yet denied it to him, causing worsening pain and "sharp pain sensations."
2  Plaintiff does not identify any particular individual that was aware of his knee condition and
3  acted with deliberate indifference to it.

4        The Civil Rights Act under which this action proceeds provides for liability for state
5  actors that cause "the deprivation of any rights, privileges, or immunities secured by the
6  Constitution." 42 U.S.C.§ 1983.  The statute plainly requires that there be an actual connection
7  or link between the actions of the defendants, and the deprivation alleged to have been suffered
8  by the plaintiff.  See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423
9  U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the
10 deprivation of a constitutional right, within the meaning of section 1983, if he does an
11 affirmative act, participates in another's affirmative acts, or omits to perform an act which he is
12 legally required to do that causes the deprivation of which complaint is made." Johnson v.
13 Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

14       Plaintiff is advised that he cannot state a claim by alleging conduct by medical officials in
15 general.  In order to hold an individual defendant liable, Plaintiff must name the individual
16 defendant, describe where that defendant is employed and in what capacity, and explain how that
17 defendant acted under color of state law.  Plaintiff should state clearly, in his or her own words,
18 what happened.  Plaintiff must describe what each defendant, *by name*, did to violate the
19 particular right described by Plaintiff.

20       Plaintiff alleges that through the inmate grievance process, he discovered that Defendant
21 C/O Carey was responsible for packing Plaintiff's property when he was transferred from CCI
22 Tehachapi to CMC San Luis Obispo.  Plaintiff appears to allege that Carey intentionally left
23 Plaintiff's knee brace out when he packed Plaintiff's property.   Plaintiff has not, however,
24 alleged any facts indicating that the specific conduct of Defendant Carey caused him injury.
25 There are no allegations that Plaintiff was seen or diagnosed by a medical professional who
26 diagnosed Plaintiff with a knee injury resulting from the lack of a knee brace.  An allegation that
27 Plaintiff was missing a knee brace and generalized allegation of knee pain at another facility fail
28 to state a claim for relief. It is unclear whether Plaintiff sought medical treatment for his knee at

11

1 CMC, other than filing requests to get his knee brace back.  In order to hold Defendant Carey
2 liable for an Eighth Amendment medical care claim, he must allege facts indicating that
3 Defendant Carey knew of an objectively serious medical condition, and acted with deliberate
4 indifference to that condition, causing Plaintiff injury.  Plaintiff has failed to do so here.  Plaintiff
5 will, however, be granted leave to file an amended complaint.

      **B.**     **Sexual Harassment**

Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment.  See Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)("In the simplest and most absolute of terms . . . prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse . . . ")  see also  Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia, 877 F. Supp. 634, 665 (D.C. 1994)("Unsolicited touching of . . . prisoner's [genitalia] by prison employees are 'simply not part of the penalty that criminal offenders pay for their offenses against society'"(quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994).

In evaluating a prisoner's claim, courts consider whether "the officials acted with a sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough to establish a constitutional violation."  Hudson v. McMillian,503 U.S. 1, 8 (1992).  Although the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the latter to be in violation of the constitution.  Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000).

Here, the Court finds that Plaintiff's allegations fail to state a claim for relief.  Plaintiff's allegations indicate that Langhardt made sexually suggestive comments, intimating that he wanted to engage in sexual activity with Plaintiff.  Although Plaintiff does allege that there was physical contact, it was limited to a touching of Plaintiff's hand in a suggestive way with Defendant Langhardt's finger.  A single instance of physical contact, while sexually suggestive in nature, does not satisfy the standard set forth in Schwenk. Schwenk distinguishes sexual

1 harassment from sexual assault, which violates the Eighth Amendment. (Id.)   In that case, the
2 inmate was subjected to forcible sexual contact by a prison guard.  While sexually suggestive, a
3 single instance of touching Plaintiff's hand is insufficient to state a claim under the Eighth
4 Amendment.  This claim should therefore be dismissed.

### C.     First Amendment

#### 1.     Access to Courts

Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).  However, to state a viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation." Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011)(citing Lewis, 518 U.S. at 348)(internal quotation marks omitted); Christopher v.Harbury, 536 U.S. 403, 415(2002).

Plaintiff's sole allegation is that Defendant Grant denied Plaintiff access to the law library.  Plaintiff alleges that he was "appealing his conviction with actions in Los Angeles Superior Court." (Compl. p. 10.)   The Court finds the allegation to be vague as not factually supported.  Plaintiff does not specify how Defendant Grant denied Plaintiff access to the law library – whether he was completely denied access or had his access limited.  Plaintiff does not indicate when he was denied access.  Further, Plaintiff does not specify what action he was pursuing in Los Angeles Superior Court.  A vague reference to "actions" is insufficient.  Plaintiff does not refer to a specific action by name or case number, and does not identify the nature of the action – i.e. habeas petition, appeal, or other challenge to his conviction.  Finally, Plaintiff does not link any specific conduct on Defendant Grant's behalf that resulted in injury as that term is defined in Lewis.  Specifically, there are no facts alleged indicating that Plaintiff had his action dismissed, or suffered any legal consequence as a result of specific conduct by Grant.  Plaintiff fails to state a cognizable claim.

#### 2.     Retaliation

A plaintiff may state a claim for a violation of his First Amendment rights due to

retaliation under section 1983. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Cartier, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 169 (9th Cir. 2009).

Plaintiff alleges that in response to Langhardt's comments on June 19, 2012, Plaintiff told Langhardt that "I would appreciate it if he would not address me or play with me in that way." (Compl. p. 8.) Plaintiff alleges that in response to his request, Langhardt searched his cell. Plaintiff requested a cell search slip, and Langhardt "threatened to write me up for threatening him." (Id). Plaintiff alleges that after the June 19, 2012, incident, he experienced "denial of yard, law library, destroyed packaged items ordered from Union Supply the months of December 2012 and legal mail."

The Court finds that Plaintiff fails to plead a cognizable claim for retaliation. Although Plaintiff alleges that his cell was searched by Langhardt and Langhardt threatened to write Plaintiff up, there is no specific conduct charged to Langhardt that chilled Plaintiff's exercise of his First Amendment rights in response to Plaintiff's exercise of a protected activity. A vague and conclusory allegation that Plaintiff was denied access to yard activity and loss of his personal property does not subject Defendant Langhardt to liability for retaliation in violation of the First Amendment. There are no facts alleged indicating when Plaintiff was denied access to the yard, for how long, or whether Langhardt was in a position to deny Plaintiff yard access on a particular occasion. Plaintiff is referred to the above paragraph for the requirements to state a claim for denial of access to the courts. A simple allegation that Plaintiff was threatened, and at some point suffered denial of privileges, is insufficient to hold Defendant Langhardt liable for retaliation. Plaintiff fails to plead a cognizable claim for retaliation.

**D. Grievance**

Plaintiff alleges that he filed a grievance regarding the conduct of Defendants Grant and

Carey. Plaintiff alleges that Defendant Appeals Coordinator Alomari refused to process the grievance. Plaintiff sent a request to Defendant Captain Matzen, but did not receive a response. Lt. Nouwels eventually responded, denying Plaintiff's request to be moved. Plaintiff continued to submit requests to be moved away from Defendant Langhardt in the form of 602 grievances, form 22s, and letters. Plaintiff alleges that all of his requests were ignored.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff does not have a protected liberty interest in the processing of his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). This claim therefore fails.

As to any claim that the inmate grievances put Defendants on notice of constitutional violations, Plaintiff is advised that involvement in reviewing an inmate's administrative appeal does not necessarily demonstrate awareness of the alleged violation. Peralta v. Dillard, 744 F.3d 1078, 1086-87 (9th Cir. 2014).

**E.     ADA**

Plaintiff filed a "modification disability claim," seeking a knee brace. (Compl. p. 18.) On May 28, 2013, Dr. Duncan, M.D., denied the request on the ground that Plaintiff did not have a knee brace chrono. Plaintiff alleges that this was incorrect, because Dr. Vu issued a renewed chrono in December of 2012. Plaintiff was transferred to Pelican Bay State Prison, where another request for a knee brace was denied. Plaintiff complained that the denial of a knee brace was causing his knee "to get worse with pain and a tearing sharp pain sensation." (Comp. p. 19.) The doctor at Pelican Bay continued to deny Plaintiff's request for a knee brace, "even after measuring right and left calf and noticing the right calf was smaller than the left calf." (Id.)

Title II of the Americans With Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, and activities of a public entity, or be subject

to discrimination by such entity." 42 U.S.C. § 12132. Tile II applies to the services, programs, and activities provided for inmates by jails and prisons. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 208-13, (1998); Simmons v. Navajo Cnty., 609 F.3d 1011-1021-22 (9th Cir. 2010); Pierce v. Cnty. of Orange, 526 F.3d 1190, 1214-15 (9th Cir. 2008). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002); accord Simmons, 609 F.3d at 1021; McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

Plaintiff's complaint does not set forth any facts supporting a claim that he was excluded from or discriminated against with regard to services, programs, or activities at CCI Tehachapi by reason of any diagnosed disability. To the contrary, the incidents giving rise to this lawsuit appear related solely to the medical care Plaintiff was provided, and the treatment, or lack of treatment, concerning Plaintiff's medical condition does not provide a basis upon which to impose liability under the ADA. Simmons, 609 F.3d at 1022 (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)). Plaintiff's ADA claim should therefore be dismissed.

**F.    Venue**

Plaintiff names Defendants employed by the CDCR at CMC San Luis Obispo and Pelican Bay State Prison. For the reasons noted above, Plaintiff fails to state any claim against any other defendants than CCI Defendants Langhardt, Serna, Carey and Nixon. Should Plaintiff seek to hold officials at Pelican Bay and CMC liable, he is advised that CMC San Luis Obispo is located in the Central District of California and Pelican Bay State Prison is located in the Northern District of California.

Plaintiff is advised that for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The federal venue statute requires that a civil action, other than one based on diversity jurisdiction, be brought only in "(1) a judicial district

where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391 (b).  The decision to transfer venue of a civil action under § 1404 (a) lies soundly within the discretion of the trial court.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).   Plaintiff is therefore advised that should he desire to pursue claims against Defendants at CMC San Luis Obispo or Pelican Bay State Prison, he should file a separate civil action in the appropriate district.

### G. Supervisory Defendants

Plaintiff names as Defendants former CDCR Secretary Matthew Cate, CCI Warden K. Holland and Associate Warden M. Bryant.  Plaintiff is advised that government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009).  Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions.  Id. at 673.  In other words, to state claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.  Plaintiff has failed to do so here.  The supervisory defendants should therefore be dismissed.

### H. Rule 18(a)

Plaintiff is advised that "a party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or alternate claims, as many claims, legal or equitable or maritime, as the party has against an opposing party." Fed. R. Civ. P. 18(a).  Thus, multiple claims against a single party are permissible, but Claim A against Defendant 1 should not be joined with unrelated claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass (a multiple claim, multiple defendant) suit produces, but also to ensure that prisoners pay the required filing fees. The Prison Litigation Reform Act limits to 3 the number

of frivolous suits or appeals that any prisoner may file without the prepayment of the required fees. 28 U.S.C § 1915(g). George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may not assert claims against different individuals located at different institutions. Plaintiff may not assert claims for unrelated incidents at the same institution.

Should Plaintiff choose to file a first amended complaint, he must plead only related claims. If Plaintiff does not do so and his amended complaint sets forth unrelated claims which violate joinder rules, the Court will dismiss the claims it finds to be improperly joined. Plaintiff is cautioned that if he fails to make the requisite election regarding which category of claims to pursue and his amended complaint sets forth improperly joined claims, the Court will determine which claims proceed and which will be dismissed. Visendi v. Bank of America, N.A., 733 F.3d 863, 870–71 (9th Cir.2013).

## IV.

## CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable claim against Defendants Serna and Langhardt for excessive force in violation of the Eighth Amendment, against Defendants Serna, Langhardt, Carey and Nixon for failure to decontaminate Plaintiff in violation of the Eighth Amendment, and against Defendant Nixon for deliberate indifference to serious medical needs. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against Defendants Serna, Langhardt, Carey and Nixon his Eighth Amendment claims, Plaintiff may so notify the Court in writing. The Court will recommend that the other defendants and claims be dismissed for failure to state a claim. Plaintiff will then be provided four summons and four USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendants Serna, Langhardt, Carey and Nixon.

If Plaintiff elects to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's

constitutional or other federal rights, Iqbal, 556 U.S. at 678-679; Jones, 297 F.3d at 934. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . Twombly, 550 U.S. at 555 (citations omitted). The mere possibility of misconduct is insufficient to state a claim. Iqbal, 556 U.S. at 678. Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 1467, 1474 (7th Cir. 2007)(no "buckshot" complaints).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only against Defendants Langhardt and Serna for excessive force, against Defendants Langhardt, Serrano, Carey and Nixon for failure to decontaminate Plaintiff, and against Defendant Nixon for deliberate indifference to serious medical needs; and

3. **If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed for failure to obey a court order.**

IT IS SO ORDERED.

Dated:   **December 8, 2015**            /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE